OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21ˢᵗ Floor
2929 North Central Avenue
Phoenix, Arizona  85012-2794

P.O. Box 36379
Phoenix, Arizona  85067-6379

Telephone          602.640.9000
Facsimile          602.640.9050

1
2
3
4
5
6
7

Jonathan F. Ariano, Atty. No. 019658
Jason J. Romero, Atty. No. 023429
OSBORN MALEDON, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona  85012-2794
(602) 640-9000
Facsimile:  (602) 640-9050
jariano@omlaw.com
jromero@omlaw.com

Attorneys for Plaintiff

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE DISTRICT OF ARIZONA

10
11
12
13
14
15
16
17

| | |
|---|---|
| NAMESCAPE CORPORATION, an Arizona Corporation, | ) ) ) |
| Plaintiff, | ) )  No. ) |
| vs. | ) ) |
| THE DOT NET FACTORY, LLC, an Ohio Limited Liability Company, dba THE DOT NET FACTORY, | ) )  **COMPLAINT** ) ) )  **(Trademark Infringement; Unfair** ) )  **Competition)** |
| Defendants. | ) ) ) ) |

18
19
20
21
22
23
24
25
26
27
28

For its Complaint against the above-named Defendant, Plaintiff Namescape
Corporation ("Namescape") alleges as follows:

**PARTIES AND JURISDICTION**

1.      Namescape is an Arizona corporation, with its principal place of
business in Maricopa County, Arizona.  Namescape's business activities include the
production and sale of network account management software to companies across
virtually every industry throughout the United States, and internationally.

2.      Upon information and belief, Defendant The Dot Net Factory, LLC
("TDNF") is an Ohio limited liability company, with its principal place of business in
Franklin County, Ohio.

3.     Namescape seeks permanent injunctive relief, damages, and attorneys' fees from TDNF's intentional misappropriation of Namescape's federally-registered myPassword® name and mark.  TDNF's acts constitute trademark infringement, unfair competition.  Namescape's claims arise out of events occurring in Arizona.

4.     Subject matter jurisdiction exists under 15 U.S.C. § 1121, and 28 U.S.C. §§1331 and 1338(a) and (b), and 28 U.S.C. § 1367(a).

5.     Pursuant to 28 U.S.C. §1391(b) and (c), venue is proper in this District.

## GENERAL ALLEGATIONS

6.     Namescape owns the valid and subsisting federal trademark registration for myPassword®, for use with computer software that controls self-service terminals in the field of network account management (Registration No. 3,295,170).  A copy of the registration certificate is attached as Exhibit A.

7.     Namescape's constructive date of first use for myPassword® dates back to the October 5, 2005 filing date of its intent-to-use application for federal registration.

8.     Namescape began actively marketing and selling software products throughout the United States under the myPassword® Mark on October 21, 2005 (the "myPassword® Software").  Namescape's myPassword® Software provides a secure website which allows end-users and managers to manage accounts and passwords to reduce costly calls to business help desks.

9.     Since before and after applying for and acquiring its federal trademark registration, Namescape has expended significant funds in developing and marketing its myPassword® Software bearing Namescape's myPassword® Mark.  As a result, Namescape currently enjoys strong goodwill in its myPassword® Mark throughout the United States.

10.     TDNF directly competes with Namescape throughout the United States in the field of network account management software.  Upon information and belief, in February, 2006, TDNF launched a software package with similar functionality to

- 2 -

Namescape's myPassword® Software under the name "PASSWORD MANAGER" (the "TDNF Software").  On April 21, 2006, more than six months after Namescape applied for and began using the myPassword® Mark, and notwithstanding Namescape's well-known and prior established rights in its myPassword® trademark, TDNF stopped marketing the TDNF Software under the mark PASSWORD MANAGER and started marketing it throughout the United States, including but not limited to Arizona, under the mark "MyPassword" (the "Infringing Mark"). TDNF's Infringing Mark is the same as or confusingly similar to Namescape's myPassword® Mark, thereby directly infringing Namescape's trademark rights.

11.    Namescape's constructive use of the myPassword® Mark and federal trademark registration gives Namescape senior rights in this mark as compared to TDNF.

12.    In June 2006, Randy Bradley, Namescape's President, notified Patrick Parker, TDNF's President, of Namescape's pending trademark application, Namescape's prior use of the myPassword® Mark, and the likelihood of confusion with consumers if TDNF continued use of the Infringing Mark.  TDNF refused to discontinue its use of the Infringing Mark.

13.    On information and belief, TDNF intentionally adopted and currently uses the Infringing Mark to trade on the fame and goodwill associated with Namescape's myPassword® Mark.

14.    On information and belief, TDNF intentionally adopted and uses the Infringing Mark to cause the public to believe that Namescape is the source or origin of the TDNF Software.

15.    TDNF's use of the Infringing Mark is likely to cause consumer confusion, mistake and deception.

16.    As a direct and proximate result of TDNF's use of the Infringing Mark, consumers are likely to mistake the TDNF Software and other TDNF products as exclusively or jointly developed, licensed, or certified by or otherwise sponsored or

approved by Namescape, or incorrectly conclude that TDNF and its products are somehow affiliated, connected or associated with Namescape.

17.     As a direct and proximate result of TDNF's use of the Infringing Mark, consumers have been and are likely to be misled as to the true source, sponsorship and/or affiliation of TDNF's products.

18.     On information and belief, through its use of the Infringing Mark, TDNF intentionally and knowingly sought to cause such likely and actual consumer confusion, mistake and deception.

**COUNT I**
**(Trademark Infringement Under the Lanham Act)**

19.     Namescape realleges and incorporates herein by reference each of the allegations of Paragraphs 1 through 18 above.

20.     TNDF's use of the Infringing Mark and variants thereof to market, promote and sell its TDNF Software in direct competition with Namescape's products constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

21.     TDNF's infringement was committed knowingly and with intent that it cause confusion, mistake or deception.

22.     TDNF's intentional and willful infringement of Namescape's myPassword® registered trademark has caused and will continue to cause damage to Namescape and is causing irreparable harm to Namescape for which there is no adequate remedy at law.

**COUNT II**
**(False Designation of Origin and Unfair Competition Under the Lanham Act)**

23.     Namescape realleges and incorporates herein by reference each of the allegations of Paragraphs 1 through 22 above.

24.     TDNF's use of the Infringing Mark and variants thereof to promote, market or sell its network account management software in direct competition with Namescape's products constitutes unfair competition pursuant to 15 U.S.C. § 1125(a).

25.     TDNF's use of the Infringing Mark and variants thereof is likely to cause confusion, mistake and deception among consumers as to the affiliation, connection or association between Namescape and TDNF, and as to origin, sponsorship or approval of TDNF's goods by Namescape.

26.     TDNF's unfair competition has caused and will continue to cause damage to Namescape and is causing irreparable harm to Namescape for which there is no adequate remedy at law.

### COUNT III

**(Common Law Trademark Infringement and Unfair Competition)**

27.     Namescape realleges and incorporates herein by reference each of the allegations of Paragraphs 1 through 26 above.

28.     Namescape has been actively marketing and selling products under the myPassword® Mark since October 21, 2005.  The myPassword® Mark creates a distinctive designation of origin of the goods on which it is used.  Namescape's use of the  myPassword® Mark has been and continues to be widely publicized through extensive advertising and sales throughout the United States.  As a result, consumers recognize the  myPassword® Mark as indicative of software products sold by Namescape.

29.     Namescape owns common law trademark rights in its myPassword® Mark.

30.     TDNF's use of the Infringing Mark, which is the same as or confusingly similar to the myPassword® Mark, in connection with the promotion, marketing or sale of TDNF's goods constitutes a false designation of origin that is likely to cause confusion or to cause mistake or to deceive consumers as to an affiliation, connection, or association with Namescape, or as to Namescape's sponsorship or approval of TDNF's goods, service, or commercial activities.

31.     TDNF's conduct is willful, deliberate and with bad intent to profit from Namescape's trademark

32.     TDNF's conduct has caused and will continue to cause damage to Namescape in an amount to be determined at trial.  TDNF's actions will continue to cause irreparable harm to Namescape unless restrained by this Court.

**WHEREFORE**, Namescape prays for judgment against TDNF as follows:

A.      A permanent injunction enjoining and prohibiting TDNF and/or its agents, servants, employees, officers, attorneys, successors and assigns from:

   1.      using any name or mark that contains the myPassword® Mark or colorable imitations thereof in advertising, marketing, promoting, describing, offering for sale or providing any goods, services or information;

   2.      otherwise infringing on Namescape's registered myPassword® Mark and other registered marks;

   3.      obtaining and/or maintaining any registration(s) that contain myPassword® or any colorable imitations thereof;

   4.      taking any action calculated or likely to induce the belief that TDNF and/or its goods or services are in any way associated, connected, affiliated, licensed, or authorized by Namescape;

   5.      using the myPassword® Mark or colorable imitations thereof in connection with Google Adwords or any other pay-per-click advertising program;

   6.      using the myPassword® Mark or colorable imitations thereof as a search term to link internet users to any TDNF website through any internet search engine.

B.      Ordering TDNF to file with this court and serve on Namescape within thirty days after the service of the injunction, a report in

writing, under oath, setting forth in detail the manner and form in which TDNF has complied with the injunction.

C.   An award of damages in favor of Namescape in an amount to be determined at trial;

D.   An award of treble damages as provided by 15 U.S.C. 1117(b);

E.   An award of all profits received by TDNF from the sale of products identified or advertised in any manner by use of the Infringing Mark;

F.   An award of attorney's fees and costs as provided by 15 U.S.C. § 1117(a) and (b);

G.   An award of exemplary damages for TDNF's willful and intentional acts;

H.   Ordering an accounting held to determine the damages and attorney's fees set forth above;

I.   Any other and further relief as the Court deems appropriate and equitable under the circumstances.

DATED this 12th day of February 2008.

OSBORN MALEDON, P.A.


By   /s/ Jason J. Romero
Jonathan F. Ariano
Jason J. Romero
2929 North Central
Suite 2100
Phoenix, Arizona  85012-2794
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing:

/s/ Susan Whitaker

1912791

# EXHIBIT
# A

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

United States Patent and Trademark Office

Reg. No. 3,295,170
Registered Sep. 18, 2007

## TRADEMARK
### PRINCIPAL REGISTER

# myPassword

BRADLEY, RANDALL E. (UNITED STATES INDIVIDUAL)
4815 E MOONLIGHT WAY
PARADISE VALLEY, AZ 85253

FOR: COMPUTER SOFTWARE FOR CONTROLLING SELF-SERVICE TERMINALS IN THE FIELD OF NETWORK ACCOUNT MANAGEMENT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 10-21-2005; IN COMMERCE 10-21-2005.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 78-727,421, FILED 10-5-2005.

REBECCAH GAN, EXAMINING ATTORNEY